UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TELECENTER, INC.,

    Plaintiff,

v.                                    Case No: 8:12-cv-543-T-36TGW

FDIC AS THE RECEIVER FOR FIRST
COMMERCIAL BANK OF TAMPA BAY,

    Defendant.
_____/

## ORDER

This matter comes before the Court upon the Defendant's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment (Doc. 87), Plaintiff's response thereto (Docs. 96-98), and Defendant's reply (Doc. 101). Oral argument on the motion was held on January 20, 2015 (Doc. 109). The Court, having considered the motion and memoranda, depositions, affidavit, and statement of undisputed facts, and being fully advised in the premises, will grant in part and deny in part Defendant's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment.

**I.    Undisputed Facts[1]**

At all times material hereto, Plaintiff Telecenter, Inc. ("Telecenter")[2] was a Florida corporation, incorporated by Gaby Fraifer ("Fraifer"). Doc. 99 at p. 2. Telecenter's Articles of Incorporation were filed with the Office of the Secretary of the State of Florida in 1996. Doc. 99

---

[1] These facts are derived from the statement of undisputed facts, deposition transcripts and affidavit submitted by the parties.

[2] All of the documentary exhibits in this action refer to "Tele-Center, Inc." but the Plaintiff has referred to itself as "Telecenter, Inc." throughout the pleadings. Thus, the Court will treat these names as interchangeable.

at p. 2. At all times material hereto, Fraifer was the President and only shareholder of Telecenter. *Id.*; Doc. 88 at 14:13-17. Telecenter has its own Employer Identification Number, *575, as indicated on the Request for Taxpayer Identification Number, signed by Fraifer. Doc. 99 at p. 2. In December of 2008 a business money market account, number *97, was opened at First Community Bank ("FCB") in the name of Telecenter. Doc. 88 at p. 96.

TCI Direct, Inc. ("TCI Direct") was a Delaware corporation, incorporated by Fraifer. Doc. 99 at p. 2. Fraifer has always been the only shareholder of TCI Direct. Doc. 88 at 14:18-22. TCI Direct's Amended Articles of Incorporation were filed with the State of Delaware in 2003. Doc. 99 at p. 2. On July 14, 2003, TCI Direct opened a commercial checking account with FCB. Doc. 88 at p. 97.

Fraifer requested a letter of credit from FCB for $100,000. Doc. 88 at 20:1-16. Fraifer provided a letter of credit to FCB from another bank showing the terms that he desired in the letter of credit. Doc. 99 at p. 2. Troy Newsome ("Newsome"), Executive Vice President of FCB, told Fraifer that they could do that but he had to guarantee the letter of credit with a Certificate of Deposit ("CD"). Doc. 88 at 20:1-16. Fraifer alleges that Newsome unilaterally made the decision to use funds from a TCI Direct account to fund the CD. *See* Doc. 100 ¶¶ 12-15.

On April 6, 2009, an Irrevocable Standby Letter of Credit was issued by FCB in favor of Dollar Phone Enterprises, Inc. ("Dollar") to ensure payment to Dollar by Telecenter. Doc. 99 at p. 2; Doc. 1 at p. 10; Doc. 88 at p. 105. The Letter of Credit expired by its terms on April 30, 2010. Doc. 88 at p. 105.

Also on April 6, 2009, Fraifer purchased a CD from FCB in the amount of $100,000. Doc. 1 at p. 29. The $100,000.00 that funded the CD came from the account that was in the name of TCI Direct at FCB. Doc. 99 at p. 2; Doc. 88 at pp. 108-109. However, the CD Ownership Type

was "Individual." Doc. 1 at p. 29. On April 6, 2009, Fraifer signed an Assignment of Certificate of Deposit which was meant to secure Telecenter's debt to FCB represented by a "promissory note or other agreement, No. 1101, dated April 6, 2009 . . . in the amount of $100,000." Doc. 88 at pp. 115-119, 124-126. Fraifer also executed a Disbursement Authorization and Cash Payment Summary dated April 6, 2009. *Id.* at p. 127. This document was signed twice by Fraifer but neither signature is dated. *Id.* The second signature is under a handwritten note saying "Authorize to Debit Telecenter, Inc. d/d/a (sic) #1028553." *Id.*

According to Fraifer's testimony, he signed all of these documents without looking through anything. *Id.* at 21:11-22:14, 25:2-5. However, Fraifer also testified that he asked Newsome why his name was "there" because "this is for Telecenter." *Id.* at 22:4-5. Newsome responded that it did not matter and the document did not have to be changed at that time. *Id.* at p. 22:5-14. Newsome was the only person at FCB that Fraifer ever discussed the CD with. *Id.* at 37:1-11.

On April 30, 2010, Telecenter, through Fraifer, renewed the Irrevocable Standby Letter of Credit by Fraifer's execution of a renewed Irrevocable Standby Letter of Credit Application. Doc. 99 at p. 2; Doc. 88 at pp. 128-129. FCB issued a renewed Irrevocable Standby Letter of Credit in favor of Dollar. Doc. 99 at p. 3; Doc. 1 at pp. 11-12; Doc. 88 at pp. 130-132. On April 30, 2010, Fraifer also executed an Assignment of Deposit Account form pursuant to which Fraifer assigned the CD to FCB as security for Telecenter's loan no. 2702-001. Doc. 88 at pp. 132-135. A Corporate Resolution to Borrow/Grant Collateral (the "Resolution") was also signed by Fraifer, as president of Telecenter, on April 30, 2010. *Id.* at pp. 136-137. The Resolution granted Fraifer the authority to act on behalf of Telecenter in transactions related to borrowing money. *Id.* at p. 136. Finally, on April 30, 2010, Fraifer executed a Disbursement request and authorization regarding a variable

rate business loan in the amount of $100,000 which was to be disbursed toward the letter of credit renewal. *Id.* at p. 141.

Another of Fraifer's companies, Gulf Brisas, LLC ("Gulf Brisas"), obtained a loan from FCB in the approximate amount of $1.4 million. Doc. 89 at 9:9-10. Fraifer was the individual guarantor of the Gulf Brisas loan. *Id.*

By its terms, the letter of credit expired on April 30, 2011 and there is no evidence that it was renewed. *See* Doc. 88 at p. 128.

On June 8 or 9, 2011, Fraifer met with Newsome to discuss the Gulf Brisas loan. *Id.* at pp. 54-57. Fraifer testified that he told Newsome he could not make the loan payments and they would have to get it reduced somehow. *Id.* at pp. 54:4-56:3. Newsome agreed to help and told Fraifer that he would take care of it. *Id.* at pp. 56:5-14. After this meeting Fraifer left the country for approximately two weeks. *Id.* at pp. 56:15-57:1.

On June 10, 2011 FCB sent a letter to Gulf Brisas indicating that the loan was delinquent and had not been paid on in the last four months. *Id.* at p. 144. FCB informed Gulf Brisas that if the loan was not paid in full by June 30, 2011 the interest rate would increase to the maximum default rate. *Id.* at p. 144. On June 17, 2011, FCB was closed by the Florida Office of Financial Regulation, and the FDIC-R was appointed as receiver. Doc. 99 at p. 3.

On June 18, 2011 the FDIC sent a letter to Telecenter stating that FCB had been closed and the FDIC was appointed as receiver. Doc. 1 at p. 33. The letter further stated that FCB's records indicate that Telecenter "may be the account party of the letter of credit referenced above" which was Number 2702-1102. *Id.* A second letter from the FDIC to Telecenter, dated June 22, 2011, indicated that Telecenter may be an account party to letter of credit number 2702-1101. *Id.* at p. 34. The FDIC further stated that it had elected to disaffirm the letter of credit and advised

4

Telecenter to file a Proof of Claim by September 21, 2011 to preserve any claims it may have against the receivership estate. *Id.* at pp. 34-35. Fraifer filed the Proof of Claim in the name of Telecenter on or about September 16, 2011. Doc. 99 at p. 3; Doc. 88 at p. 150.

Fraifer testified that on or about June 24, 2011 he went into the FCB branch and asked to get his letter of credit and the funds from the CD so that he could go to another bank. Doc. 88 at pp. 62:4-63:5, 71:8-17. Fraifer says that FCB refused to give him the money from the CD because he owed money on a loan and his accounts had been frozen. *Id.* at pp. 63:7-16.

In or around September of 2011, Stonegate Bank ("Stonegate") assumed the accounts of FCB. *Id.* at pp. 142-143. Stonegate acquired the Gulf Brisas loan. Doc. 99 at p. 3. Stonegate offset the CD against the Gulf Brisas loan. *Id.;* Doc. 88 at pp. 142-143, 184.

On October 14, 2011 the FDIC-R sent a letter to Fraifer requesting additional information regarding his proof of claim. Doc. 88 at p. 147. On January 13, 2012, the FDIC-R sent another letter to Fraifer informing him that his claim was denied as a result of his failure to provide the requested documentation. *Id.* at p. 148. The letter informed Fraifer that he had 60 days to file a lawsuit relating to the claim denial and if he did not his claim would be forever barred. *Id.*

This action was originally filed against the FDIC in its corporate capacity and in its capacity as receiver for FCB. *See* Docs. 1 and 37. However, the claims against FDIC in its corporate capacity have been voluntarily dismissed. *See* Doc. 76. Accordingly, the only claims at issue here are Counts II through IV of the First Amended Complaint (Doc. 37), which allege breach of contract, liability for FCB's negligence, and conversion by FDIC in its capacity as the receiver for FCB.

## II. Standard of Review

### A. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure No. 12(c) permits a party to move for judgment on the pleadings. In evaluating a motion for judgment on the pleadings, a court will accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *See Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Id.*

### B. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are genuine only if a reasonable jury, considering the evidence present, could find for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

## III. Discussion[3]

### A. Standing

Defendant first argues that Plaintiff does not have standing to pursue this action because it was not the funding source for the CD at issue here.

Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies." *See Allen v. Wright,* 468 U.S. 737, 750 (1984). The several doctrines that encompass the case or controversy requirement — standing, mootness, ripeness, political question and the like — are "founded in concern about the proper — and properly limited — role of the courts in a democratic society." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Thus, a litigant must have "standing" to invoke the power of a federal court. *Id.*

To establish standing for purposes of Article III, a plaintiff must demonstrate three things: (1) an "injury in fact" — a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical"; (2) causation — a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; (3) redressability — a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. *Vermont Agency of Natural Resources v.*

---

[3] Given that both parties rely on evidence beyond the pleadings in this matter, the Court has evaluated this case on the summary judgment standard of review, rather than the judgment on the pleadings standard of review.

7

*U.S. ex. rel. Stevens*, 529 U.S. 765, 771 (2000). Because standing is a jurisdictional issue that cannot be waived "every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates." *Florida Ass'n of Med. Equip. Dealers v. Apfel,* 194 F.3d 1227, 1230 (11th Cir. 1999) (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 110 S. Ct. 596, 607-8 (1990)). However, lack of merit does not equate to lack of standing. *See, e.g., Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc) ("For purposes of standing, we must assume the Plaintiffs' claim has legal validity.").

The statement of undisputed facts submitted by the parties indicates that the CD in question was funded by TCI Direct – not Plaintiff Telecenter. Thus, it is not immediately apparent why Telecenter, rather than TCI Direct, would be bringing this action. Plaintiff claims that TCI Direct is "really" a "wholly owned entity of Telecenter." Doc. 97 at p. 2. Fraifer testified that Newsome knew that the funds in the accounts of TCI Direct were "really and actually owned by Telecenter" and told Fraifer that it didn't matter whose name the CD was in. Doc. 97 at pp. 2-3. Plaintiff further claims that Newsome unilaterally chose which account to fund the CD from without Fraifer's input.

There is no question that Telecenter submitted a proof of claim regarding the CD, and Fraifer has testified that he made a demand for the CD on behalf of Telecenter, to FCB staff, while FCB was under FDIC receivership. Fraifer's testimony indicates that he asked Newsome whether it mattered that the CD was in his name rather than Telecenter's and Newsome told him it did not. Whether or not Fraifer was legally justified in relying on that statement goes to the merits of the claim – not the issue of standing.

The loss of the CD is an injury in fact and the relief sought in this action (money damages) could remedy that injury. To the extent that Telecenter may be entitled to the funds from the CD,

the FDIC-R is properly alleged to be the party that caused the damage by withholding those funds. Accordingly, on the record before the Court, Telecenter has standing to bring this action and the Court will address the merits of the claims.

> B. **Failure to Exhaust Administrative Remedies**

The FDIC-R also argues that this Court lacks subject matter jurisdiction over this matter because Plaintiff failed to exhaust its administrative remedies. According to the FDIC-R, the Plaintiff was required to submit the exact claims alleged here – breach of contract, negligence, and conversion – for administrative review by the FDIC before bringing this action. Doc. 101 at p. 4. According to the FDIC-R, submitting a claim for the value of the CD was insufficient. *Id.*

Under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies against the FDIC. *See Marquis v. Federal Deposit Ins. Corp.,* 965 F.2d 1148 (1st Cir.1992); *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907-908 (5th Cir.1994); 12 U.S.C. § 1821(d)(12). To exhaust these remedies, a claimant who receives notice from the FDIC must submit any claims to the FDIC, in writing, by a specified date, at least 90 days after publication of the notice. *See* 12 U.S.C. § 1821(d)(3)(B)(i).

> Unless extended by a written agreement, the FDIC has 180 days after a claim is filed to allow or disallow it and notify the claimant of the determination. 12 U.S.C. § 1821(d)(5)(A)(i), (ii). A person whose claim is disallowed, or whose claim is not decided within the 180 day period, may pursue administrative remedies or file a civil action in an appropriate federal district court. 12 U.S.C. § 1821(d)(6)(A).

*Iberiabank v. Coconut 41, LLC,* Case No. 2:11-cv-321-FtM-29DNF, 2011 WL 4807701, 3 (M.D. Fla. Oct. 11, 2011).

Here, Telecenter filed a timely proof of claim and the claim was disallowed by the FDIC within the 180-day period. The FDIC-R suggests that, because Plaintiff failed to put the FDIC-R

on notice that it would specifically pursue breach of contract, negligence and conversion claims, Plaintiff's claims are barred.

Defendant relies on *Brown Leasing Co. v. FDIC,* for its argument that Telecenter was required to specifically assert each claim presented here in its proof of claim. 833 F. Supp. 672 (N.D. Ill. 1993). However, the facts in *Brown Leasing* are in no way analogous to those presented here. The plaintiff in Brown Leasing was attempting to assert additional claims for additional amounts after its time to seek administrative remedies lapsed. Here, Plaintiff has always sought only the amount of the CD. Furthermore, in *Brown Leasing*, the plaintiff filed an action prior to the bank going into receivership, the case was stayed to permit exhaustion of administrative remedies, and then after the stay was lifted the plaintiff sought to amend the complaint to bring new claims for additional damages.

The same is true of the next case relied upon by the FDIC-R, *Coleman v. FDIC*, 826 F.Supp. 31 (D. Mass. 1993). In that case the "new claims" were being asserted in an amended pleading following a stay to permit exhaustion of administrative remedies. Furthermore, just like *Brown Leasing*, Coleman was attempting to add claims for additional relief beyond what was requested in the proof of claim.

The FDIC-R has not presented a single case to support its argument that Telecenter was required to specify its causes of action in the administrative process. Telecenter advised the FDIC that it was seeking the amount of the CD, $100,000.00. Accordingly, Plaintiff's claim is not barred by a failure to exhaust administrative remedies.

    **C.**    **Count II: Breach of Contract**

In order to recover on a claim for breach of contract, a plaintiff must prove by a preponderance of the evidence the following elements: (1) the existence of a contract, (2) breach

of the contract, and (3) damages resulting from the breach. *See Knowles v. C.I.T. Corp,* 346 So.2d 1042, 1043 (Fla. 1st DCA 1977). Plaintiff alleges breach of contract but has failed to identify any contract between itself and FDIC-R, or FCB. While Fraifer claims that he wanted the CD to be placed in Telecenter's name, the fact is that it was not. A party has a duty to learn and know the contents of an agreement before signing it. *Onderko v. Advanced Auto Ins., Inc.,* 477 So.2d 1026, 1028 (Fla. 2d DCA 1985); *Mfrs. Leasing, Ltd. v. Florida Dev. & Attractions, Inc.,* 330 So.2d 171, 172 (Fla. 4th DCA 1976).

At the oral argument, Telecenter's counsel specified that the contract at issue in this first count is an oral agreement between Newsome, as an officer of FCB, and Telecenter. However, Telecenter cannot enforce any alleged oral representations by FCB or its agents. The oral representations are unenforceable against the FDIC-R pursuant to 12 U.S.C. §§ 1821 and 1823. *See Langley v. FDIC*, 484 U.S. 86 (1987); *McCullough v. FDIC*, 987 F.2d 870 (1st Cir. 1983); *FDIC v. Gulf Life Ins. Co.*, 737 F.2d 1513 (11th Cir. 1984); *Clay v. FDIC*, 934 F.2d 69 (5th Cir. 1991). Thus, the statements allegedly made by Newsome cannot be used as the basis for a breach of contract claim against the FDIC-R. Accordingly, Defendant is entitled to judgment in its favor as to Count II of the First Amended Complaint, breach of contract, as a matter of law.

**D.     Count III: Negligence by FCB**

In Count III, Telecenter alleges that FCB was negligent when it put the CD in Fraifer's name rather than in Telecenter's name. Telecenter further alleges that the FDIC-R "stands in the shoes of FCB" and, therefore, is liable for the negligent acts of FCB's employees.

"The essential elements of negligence from which liability will flow are duty, breach of duty, legal cause and damage." *Florida Power & Light Co. v. Lively,* 465 So. 2d 1270, 1273 (Fla. 3d DCA 1985). Defendant argues that it is entitled to judgment in its favor because Fraifer ratified

the CD being placed in his own name when he signed the agreement to create the CD and when he signed documents to assign the CD upon renewal of the standby letter of credit. Defendant further argues that, to the extent this claim is based on any alleged negligent misrepresentations by Newsome, it is barred by 12 U.S.C. § 1821(d)(9)(A).

Telecenter argues that Fraifer did not ratify the CD being placed in his name individually because he inquired about this titling and was told, by Newsome, that it did not matter. Telecenter also argues that Defendant is misinterpreting 12 U.S.C. § 1821(d)(9)(A).

Neither party provides convincing legal support for their arguments. Defendant cites to legal authority which supports the principle that parties to contracts have a duty to read and become aware of the contents of a contract before signing it. However, in all cases cited by Defendant the plaintiff is party to the contract and is attempting to avoid some obligation set forth therein. That is not the case here. Instead, Telecenter, a non-party to the CD agreement, is alleging that FCB was negligent when it put the CD in Fraifer's name, rather than Telecenter's name. As noted by Defendant, Fraifer signed the CD documents in his individual capacity – not as an officer of Telecenter.  Telecenter was a client of FCB and there are several factual disputes related to whether FCB breached a duty owed to Telecenter when it allowed the CD to be placed in Fraifer's name and informed Fraifer that the titling did not matter.

Defendant's argument that this claim is statutorily barred is also unconvincing. FDIC-R argues that because oral promises made by the bank cannot be enforced as agreements against the FDIC-R, this claim should be disallowed. However, the fact that Newsome's oral statements to Plaintiff cannot be enforced as a legal agreement or contract against FDIC-R does not bar the Plaintiff from using those statements as evidence to support its negligence claim. The Court will consider additional argument as to the statutory bar at the trial of this matter.

Given that there are factual disputes regarding facts material to the elements of this negligence claim, summary judgment is not appropriate as to Count III.

### E.     Count IV: Conversion by FDIC-R

The FDIC-R argues that this claim for conversion is barred by the Federal Tort Claims Act ("FTCA"). The FTCA is a limited waiver of the United States' sovereign immunity. *Bennett v. U.S.,* 102 F.3d 486, 487 (11th Cir. 1996).

The FDIC-R's ability to sue and be sued is contained in 12 U.S.C. § 1819(a), but that ability does not extend to allegations that the FDIC-R committed a tort. Thus, the exclusive judicial avenue of relief for any tort purportedly committed by FDIC-R is a suit against the United States under the FTCA. 28 U.S.C. § 2679(a); *FDIC v. Meyer,* 510 U.S. 471, 476 (1994) ("[I]f a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue-and-be-sued clause."). A claim is cognizable under § 1346(b) of the FTCA if it alleges a negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

Telecenter alleges in its First Amended Complaint that the FDIC-R "converted to its own use the proceeds of the subject CD in the amount of $100,000 plus interest." Doc. 37 ¶ 52. Such claim is a "cognizable" tort under § 1346(b) of the FTCA and, pursuant to 28 U.S.C. § 2679(a), the only proper defendant in an FTCA action is the United States, not its agencies. *See Jackson v. Kotter,* 541 F.3d 688, 693 (7th Cir. 2008). ("The only proper defendant in an FTCA action is the United States.") Consequently, Telecenter's claims against the FDIC-R for conversion are barred

by the FTCA. The FDIC-R is entitled to judgment in its favor as to Count IV of the First Amended Complaint, conversion, as a matter of law. Accordingly, it is

**ORDERED AND ADJUDGED that**:

1. Defendant's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment (Doc. 87) is **GRANTED in part and DENIED in part**.

2. Defendant is entitled to judgment in its favor as a matter of law on Counts II and IV of the Amended Complaint (Doc. 37). A judgment will be entered at the conclusion of this litigation.

3. In all other respects, the Defendant's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment is denied. This case will proceed to trial on February 3, 2015 as to Count III of the First Amended Complaint, negligence.

**DONE AND ORDERED** in Tampa, Florida on January 28, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any