UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TELECENTER, INC.,

      Plaintiff,

v.                                                                           Case No: 8:12-cv-543-T-36TGW

FDIC AS THE RECEIVER FOR FIRST
COMMERCIAL BANK OF TAMPA BAY,

      Defendant.

_____/

## OPINION AND ORDER

### I.    Introduction

Plaintiff Telecenter, Inc. ("Telecenter")[1] filed this action against the Federal Deposit Insurance Company ("FDIC") in its corporate capacity and in its capacity as receiver for First Commercial Bank of Tampa Bay ("FCB"). *See* Docs. 1 and 37. However, the claims against FDIC in its corporate capacity have been voluntarily dismissed. *See* Doc. 76. Moreover, this Court has granted summary judgment to Defendant on Counts II and IV of the First Amended Complaint (Doc. 37). *See* Doc. 116. Accordingly, the only claim at issue here is Count III, which alleges liability for FCB's negligence.

The Court conducted a bench trial in this case on February 3, 2015. Telecenter called two witnesses at trial: Gaby Fraifer, CEO of Telecenter, and Albert Salem, Jr., the former President of FCB. The FDIC called one witness: Troy Newsome, a former Vice President at FCB.

---

[1] All of the documentary exhibits in this action refer to "Tele-Center, Inc." but the Plaintiff has referred to itself as "Telecenter, Inc." throughout the pleadings. Thus, the Court will treat these names as interchangeable.

## II.    Stipulated Facts

The parties stipulated to the following facts, as set forth in their Joint Final Pretrial Statement (Doc. 105).

At all times material hereto, Telecenter was a Florida corporation, incorporated by Fraifer. Telecenter's Articles of Incorporation were filed with the Office of the Secretary of the State of Florida in 1996.

At all times material hereto, Fraifer was the President and only shareholder of Telecenter.

Telecenter has its own Employer Identification Number, as indicated on the Request for Taxpayer Identification Number, signed by Fraifer.

Telecenter had its own bank account at FCB.

TCI Direct was a Delaware corporation, incorporated by Fraifer. The Amended Articles of Incorporation were filed with the State of Delaware in 2003.

Fraifer was the President and only shareholder of TCI Direct.

Fraifer provided a specimen Letter of Credit to FCB from another bank showing the terms that he desired in the Letter of Credit.

On April 6, 2009, the Irrevocable Standby Letter of Credit was issued by FCB in favor of Dollar Phone Enterprises, Inc. ("Dollar") to ensure payment to Dollar by Telecenter.

The $100,000.00 that funded the CD came from the account at FCB that was in the name of TCI Direct.

The CD matured on April 30, 2010, and automatically renewed for another 389 day term.

On April 30, 2010, Telecenter, through Fraifer, renewed the Irrevocable Standby Letter of Credit by Fraifer's execution of a renewed Irrevocable Standby Letter of Credit Application.

FCB issued a renewed Irrevocable Standby Letter of Credit in favor of Dollar.

Gulf Brisas, LLC ("Gulf Brisas"), had a loan from FCB in the approximate amount of $1.4 million. Fraifer was the individual guarantor of the Gulf Brisas loan.

On June 17, 2011, FCB was closed by the Florida Office of Financial Regulation, and the FDIC was appointed as receiver.

Telecenter, through Fraifer as President, filed a Proof of Claim with the FDIC, claiming the full amount of the CD plus interest.

Fraifer filed the Proof of Claim in the name of Telecenter.

Fraifer did not file the Proof of Claim with the FDIC in his individual name.

TCI Direct did not file a proof of claim with the FDIC.

Doc. 105 at pp. 7-8.

### III.    Findings of Fact[2]

In April of 2009, Fraifer requested a letter of credit ("LoC") from FCB for the benefit of Dollar. *See* TR Exh. 30. FCB agreed to provide the LoC so long as it was secured by a certificate of deposit ("CD") in the amount of $100,000. *See* TR Exh. 31. Fraifer agreed to this term and FCB agreed to draw up all the paperwork related to the LoC and the CD. The money that funded the CD came from an account at FCB that was in the name of TCI Direct because that was the only account at FCB that had enough money to produce the CD. On April 6, 2009, Fraifer came in to the bank to review and sign the paperwork. Fraifer browsed through the paperwork and noticed that the CD was under his name, as an individual, rather than Telecenter's name. Fraifer asked if this mattered and was told that it did not and that changing the paperwork would delay the LoC.[3] Thus, Fraifer signed all of the documents provided to him. *See* TR Exh. 1.

As a result, Fraifer, individually, was the owner of a CD at FCB in the amount of $100,000. TR Exh. 2. The $100,000.00 that funded the CD came from the account at FCB that was in the

---

[2] All exhibits admitted at trial were joint exhibits and will be cited to as "TR Exh. []."
[3] Fraifer alleges that he had this conversation with Troy Newsome. However, Newsome testified that he did not meet with Fraifer on that day and that Fraifer must have met with another FCB employee named Marshall Houck, who was the loan officer and relationship banker for Fraifer.

name of TCI Direct. *See* TR Exh. 27 & 28. On April 6, 2009, Fraifer, individually as the pledger of the CD, also signed an Assignment of Certificate of Deposit which was meant to secure Telecenter's debt to FCB represented by a "promissory note or other agreement, No. 1101, dated April 6, 2009 . . . in the amount of $100,000." TR Exh. 3. A Disbursement Authorization and Cash Payment Summary was also signed twice by Fraifer but neither signature is dated. TR Exh. 9. The second signature is under a handwritten note saying "Authorize to Debit Telecenter, Inc. d/d/a (sic) #1028553." *Id.* On the same day that Fraifer signed these documents FCB issued the LoC in favor of Dollar to ensure payment to Dollar by Telecenter. TR Exh. 6. The LoC expired by its terms on April 30, 2010. *Id.*

On April 30, 2010, Telecenter renewed the LoC by Fraifer's execution of a renewed Irrevocable Standby Letter of Credit Application. TR Exh. 10. FCB issued a renewed LoC that, by its terms, expired on April 30, 2011. TR Exh. 11. There is no evidence that it was renewed. *Id.*

Also on April 30, 2010, Fraifer, as grantor, executed an Assignment of Deposit Account form pursuant to which Fraifer assigned the CD to FCB as security for Telecenter's variable rate business loan in the amount of $100,000 which was to be disbursed toward the letter of credit renewal. TR Exh. 12, 16 & 17. A Corporate Resolution to Borrow/Grant Collateral (the "Resolution") was also signed by Fraifer, as president of Telecenter, on April 30, 2010. TR Exh. 13. The Resolution granted Fraifer the authority to act on behalf of Telecenter in transactions related to borrowing money. *Id.*

Several years prior to 2009, another of Fraifer's companies, Gulf Brisas, LLC ("Gulf Brisas"), obtained a loan from FCB in the approximate amount of $1.4 million. Fraifer was the individual guarantor of the Gulf Brisas loan, which had been renewed several times.

On June 8 or 9, 2011, Fraifer met with an FCB Vice President, Troy Newsome, to negotiate the terms of the Gulf Brisas loan, which was in default and about to expire. *See* TR Exh. 33. After this meeting Fraifer left the country for approximately two weeks. Fraifer believed his negotiations with FCB would continue when he returned.

On June 17, 2011, FCB was closed by the Florida Office of Financial Regulation, and the FDIC was appointed as receiver. On June 18, 2011 the FDIC sent a letter to Telecenter stating that FCB had been closed and the FDIC was appointed as receiver. TR Exh. 34. The letter further stated that FCB's records indicate that Telecenter "may be the account party of the letter of credit referenced above" which was Number 2702-1102. A second letter from the FDIC to Telecenter, dated June 22, 2011, indicated that Telecenter may be an account party to letter of credit number 2702-1101. TR Exh. 35. The FDIC further stated that it had elected to disaffirm the letter of credit and advised Telecenter to file a Proof of Claim, together with proof thereof, by September 21, 2011 to preserve any claims it may have against the receivership estate. *Id.*

Fraifer contacted the FDIC by phone upon returning from his trip and receiving the letters. Fraifer spoke to FDIC representative Laura Austin and inquired about getting his money back from the CD. Fraifer was told, at least twice, to go into the bank and that they should give him his money. Each time Fraifer went into the bank they refused to give him the money. Fraifer was then referred by Austin to another FDIC employee, Joseph Feeney. Feeney told Fraifer that the money in the CD had been used to offset a line of credit that was in default. TR Exh. 37.  However, Fraifer insisted that he still wanted to file a claim and requested that Feeney send him the form. TR Exh. 37. Fraifer filed the Proof of Claim in the name of Telecenter on or about September 16, 2011. TR Exh. 38.  The claim was described as a "C.D. THAT GUARANTY THE CONTINUATY (sic) OF

A STANDBY LETTER OF CREDIT NO. 2702-1101 THAT NEED TO BE RELEASED." *Id*. The amount of the claim was $103105.46. *Id.*

When FCB was closed, Stonegate Bank ("Stonegate") assumed its accounts and some loans. Stonegate acquired the Gulf Brisas loan in this transaction. Stonegate off-set the CD against the Gulf Brisas loan because Fraifer was a guarantor on that loan, the loan was in default, and the CD was in Fraifer's name. TR Exh. 36.

On October 14, 2011 the FDIC-R sent a letter to Fraifer requesting additional information regarding Telecenter's proof of claim. TR Exh. 39. Specifically, the FDIC requested documentation to substantiate the nature of the claim, the amount of the claim, and a copy of the CD by November 14, 2011. *Id.*  Further, the letter directed Fraifer to contact the FDIC claims agent, Ronald Scott, if he needed additional time or had questions. *Id*. Upon receiving this letter, Fraifer called Feeney to ask why he had to provide more information. Feeney responded that the matter was in the hands of lawyers now and there was nothing more Feeney could do. Fraifer was told that he could either follow the instructions in the letter or get his own lawyer. Fraifer testified that he looked for a lawyer and did not respond to the request for documentation because he was frustrated with the entire process.

On January 13, 2012, the FDIC sent another letter to Fraifer informing him that Telecenter's "claim is denied do (sic) to the failure to provide documentation to the receiver as requested, on October 14, 2010 (sic). The documentation was necessary for the receiver to evaluate your claim. By refusing or neglecting to provide the requested documentation, you abandoned the claims process." TR Exh. 40. The letter informed Fraifer that Telecenter had 60 days to file a lawsuit relating to the claim denial and if he did not his claim would be forever barred. *Id.* This action followed.

## IV.      Conclusions of Law

The only count at issue here is Count III for negligence, in which Telecenter alleges that FCB was negligent when it put the CD in Fraifer's name rather than in Telecenter's name and then told Fraifer it did not matter. Telecenter further alleges that the FDIC "stands in the shoes of FCB" and, therefore, is liable for the negligent acts of FCB's employees.

The FDIC argues that this Court lacks subject matter jurisdiction over this claim because Plaintiff failed to exhaust its administrative remedies. Under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies against the FDIC.  *See Marquis v. Federal Deposit Ins. Corp.,* 965 F.2d 1148 (1st Cir.1992); *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907-908 (5th Cir.1994); 12 U.S.C. § 1821(d)(12). To exhaust these remedies, a claimant who receives notice from the FDIC must submit any claims to the FDIC, in writing, by a specified date, at least 90 days after publication of the notice. *See* 12 U.S.C. § 1821(d)(3)(B)(i).

> Unless extended by a written agreement, the FDIC has 180 days after a claim is filed to allow or disallow it and notify the claimant of the determination. 12 U.S.C. § 1821(d)(5)(A)(i), (ii). A person whose claim is disallowed, or whose claim is not decided within the 180 day period, may pursue administrative remedies or file a civil action in an appropriate federal district court. 12 U.S.C. § 1821(d)(6)(A).

*Iberiabank v. Coconut 41, LLC,* Case No. 2:11-cv-321-FtM-29DNF, 2011 WL 4807701, 3 (M.D. Fla. Oct. 11, 2011).

Here, Telecenter filed a timely proof of claim and the claim was disallowed by the FDIC within the 180-day period. However, the FDIC argues that, because Plaintiff failed to provide the additional documentation requested by the FDIC, Plaintiff did not exhaust its administrative remedies and its claim is barred.

The issue of whether the provision of supplemental documentation is required to exhaust administrative remedies has not been addressed by any appellate court and is not specifically addressed by statute or regulation. However, two district courts have concluded that FIRREA does require claimants to comply with FDIC requests for supplemental documentation and that failure to comply is akin to a failure to exhaust administrative remedies. *See Bauer v. FDIC,* Case No. 2:13–cv–850–FtM–38DNF, 2015 WL 248738 (M.D. Fla. Jan. 20, 2015); *Cipponeri v. FDIC,* No. CIV–F–09–0688 AWI DLB, 2010 WL 2573994 (E.D. Cal. June 24, 2010). These courts note that the objective of FIRREA's exhaustion requirement is to avoid unnecessary litigation by allowing the FDIC to fairly and efficiently evaluate claims on its own before a lawsuit is filed. *Bauer*, 2015 WL 248738 at 5; *Cipponeri,* 2010 WL 2573994 at 6. Without sufficient information the FDIC does not have a true opportunity to fairly evaluate the claims. *Bauer*, 2015 WL 248738 at 5; *Cipponeri,* 2010 WL 2573994 at 6. Defendant urges the Court to adopt the reasoning of *Bauer,* which held that the plaintiff's claims were barred because, by failing to provide the additional documentation requested by the FDIC to substantiate her proof of claim, the plaintiff had failed to exhaust her administrative remedies.

As discussed above, the FDIC sent a letter to Telecenter in October of 2011 requesting additional documentation in support of its proof of claim. Fraifer admits receiving this letter and testified that he contacted the FDIC by phone. Joseph Feeney told him to follow the instructions in the letter or get his own attorney. Fraifer did not provide the supplemental documentation because he believed the FDIC already had all of the documentation needed. Further, Fraifer did not know where his copies of the documents were located. Fraifer's testimony at trial indicated that Fraifer was simply fed-up with the process and decided to go look for his own lawyer rather than timely comply with the FDIC's request. In the meantime, he failed to provide any written

8

response to the FDIC's request and, two months after that response was due, his claim was denied based on a lack of information.

Plaintiff argues that, because he was *pro se* during the claims process, the requirement to comply with the request for additional information should be relaxed, or even disregarded. While it is true that Plaintiff was *pro se* during the claims process, this was by his own choice. Furthermore, Plaintiff was certainly able to read and understand the letter from the FDIC which requested that additional documentation be provided by mid-November. The fact that he could not locate the documents, or did not want to look for them, does not excuse his non-compliance. Fraifer was told by Feeney that lawyers were involved and he should do what the letter said or get his own lawyer. While Fraifer may have begun searching for a lawyer, he never responded to the FDIC with any additional documents or information and no attorney appeared on behalf of Fraifer or Telecenter until this suit was filed.

Plaintiff also argues that the FDIC's letter to him in January of 2012 informed him that he could still file a lawsuit, even while simultaneously acknowledging his failure to supplement his claim form. However, "FIRREA's administrative exhaustion requirement is not subject to waiver by the FDIC." *Cipponeri,* 2010 WL 2573994 at 4. *See also Paul v. FDIC*, 91 F.3d 110, 112 (11th Cir. 1996) (finding no subject matter jurisdiction even though FDIC stipulated that the claim was untimely, but that legal consequences of this jurisdictional fact could be waived).

Having considered all of the testimony and documentary evidence in this case, the Court finds that Telecenter did not exhaust its administrative remedies, as it provided no documentation to the FDIC to support its claim.  The FDIC's need for more information in this case is warranted as the claim was filed on behalf of Telecenter when, admittedly, there was no CD at FCB under Telecenter's name. The CD was in Fraifer's name and the funds for the CD came from an account

at FCB in the name of TCI Direct. Fraifer did not provide the FDIC with any documentation of his reasons for believing that the CD in his own name should actually be returned to Telecenter.

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1.      As Telecenter failed to exhaust its administrative remedies, judgment shall be entered in favor of Defendant Federal Deposit Insurance Company and against Telecenter as to Count III of the First Amended Complaint, negligence.

2.      Defendant's motion for judgment on partial findings, pursuant to Rule 52, Fed. R. Civ. P., is denied as moot.

3.      Pursuant to the Court's previous ruling on the Defendant's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. 116), the Clerk is directed to enter a judgment in favor of Defendant and against Plaintiff on Counts II, III, and IV of the First Amended Complaint.

4.      The Clerk is further directed to close this file.

**DONE AND ORDERED** in Tampa, Florida on February 24, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

10